

The following constitutes
the order of the court. Signed January 1, 2015

_____
Charles Novack
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

ANGELITA MARY TEIXEIRA,

    Debtor.

BOARD OF ADMINISTRATION,
CALIFORNIA PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

    Plaintiff,

vs.

ANGELITA MARY TEIXEIRA,

    Defendant.

Case No. 13-46629 CN

Chapter 7

Adversary No. 14-4025

**MEMORANDUM DECISION RE:
BANKRUPTCY CODE § 523(a)(4)
CLAIM FOR RELIEF**

    On December 22, 2014, this court conducted a trial on plaintiff Board of Administration, California Public Employees' Retirement System ("CalPERS")'s non-dischargeable claim for relief against debtor and defendant Angelita Mary Teixeira ("Teixeira"). All appearances were made on the record, and this memorandum decision constitutes this court's findings of fact and conclusions of law under F,R.B.P. 7052.

    The facts underlying this adversary proceeding are not significantly in dispute. William Spedalieri, Teixeira's father, worked for the City of Fremont and participated in California's public employment retirement system maintained by plaintiff CalPERS. When Spedalieri retired in August 1992, CalPERS began paying him an (after tax) monthly retirement stipend of approximately $1800.00, which was directly deposited into Spedalieri's Fremont Bank checking account. In

1

August 1992, Spedalieri and his wife, Nancy, were the sole parties to this checking account. Spedalieri also received a monthly medical allowance from the City of Fremont, which paid him by check (made payable to him). Nancy Spedalieri pre-deceased her husband, and William Spedalieri passed away in April 2005. Teixeira was her father's sole heir. Before he died, Spedalieri apparently informed his daughter that she would continue to receive his CalPERS retirement benefits for some undisclosed period of time. By that time Teixeira was a co-tenant on his Fremont Bank checking account.

Spedalieri's CalPERS and City of Fremont retirement benefits actually terminated upon his death. While Teixeira promptly informed the City of Fremont of her father's passing (Teixeira testified that she contacted Fremont once she began receiving the medical benefits checks in the mail), she never notified CalPERS of her father's death. The CalPERS direct deposits continued unabated until April 2009, when CalPERS finally learned of Spedalieri's death through a routine, third party investigation of their retirement payments. By this time, CalPERS had deposited $102,773.15 into the Fremont Bank checking account (the "Overpayments").[1] Teixeira admitted that she spent these funds.

Teixeira works for a local public school district and thus also will receive CalPERS benefits when she retires. While she receives an annual statement from CalPers regarding her personal retirement benefits, she testified that she (a) has not analyzed or given much thought to her retirement benefits since she is not close to retirement, (b) did not know that her father's CalPERS benefits should have terminated upon his death, and © simply trusted her father's statement that she would receive these benefits until they were exhausted (even though she did not know when this was and never called CalPERS to ascertain this date). Teixeira has not reported the Overpayments on her federal and state tax returns, and her husband (who is not a party to this adversary proceeding) never

---

[1] CalPERS also withheld and directly paid $11,446.24 in IRS taxes and $2,224.00 in FTB taxes during this period, raising the total overpayment to $116,443.39.

2

MEMORANDUM OF DECISION RE: NON-DISCHARGEABILITY CLAIM

disclosed this income in an earlier Chapter 13 filing (which he filed separately).[2]

CalPERS asserts that Teixeira's failure to inform it of her father's death and her willing receipt of the Overpayments constitutes "larceny" under Bankruptcy Code § 523(a)(4). While the circuit courts differ regarding its definition, the Ninth Circuit has held that a bankruptcy court is "not bound by the state law of larceny, but,rather, may follow federal common law, which defines larceny as a 'felonious taking of another's personal property with intent to convert it or deprive the owner of the same." *In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 1991).[3] *Ormsby* defined the term "felonious" as "proceeding from an evil heart or purpose; malicious; villainous . . . Wrongful; (of an act) done without excuse or color of right." [citation omitted]. *Ibid*. Given the United States Supreme Court's recent holding in *Bullock v. BankChampaigne, N.A.*, 133 S.Ct. 526, 185 L.Ed.2d 922 (2013), larceny requires not only a wrongful act but also an actual intent to wrongfully deprive someone of their property. A debtor's knowledge and intent to deprive may be inferred by circumstantial evidence and from the debtor's conduct. *See, e.g., Edelson v. CIR*, 829 F.2d 828, 832 (9th Cir. 1987); *Donaldson v. Hayes (In re Ortenzo Hayes)*, 315 B.R. 579, 587 (Bankr. C.D. Cal. 2004). CalPERS must prove these elements by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991).

There is little question that Teixeira did not have any right to the Overpayments, and that she "wrongfully" received them. CalPERS has not, however, sufficiently demonstrated that she acted with the requisite intent. Teixeira was a credible witness, and CalPERS did not present sufficient evidence to undermine her testimony regarding her father's comments regarding his benefits and her apparent ignorance regarding the extent of his (and perhaps her future) CalPERS defined retirement rights. While the testimony raised some disconcerting points (for example, why did she not call CalPERS and ask how long the income stream would continue?), the evidence did not demonstrate

---

[2] There was no evidence that Teixeira assisted her husband in his Chapter 13 filing, and the court places no value on this evidence.

[3] Other courts have required a finding of fraudulent intent. For example, the Seventh Circuit holds that larceny is "proven if defendant has wrongfully and with fraudulent intent taken property from its owner." *In re Rose*, 934 F.3d 901, 903 (7th Cir. 1991).

that she understood that her father's CalPERS retirement income ended when he died. Nor did CalPERS demonstrate how her failure to report the Overpayments on her tax returns supported its claim (particularly when CalPERS did not introduce any evidence that she knew that these benefits constituted taxable income). Accordingly, CalPERS did not prove the requisite intent by a preponderance of the evidence, and judgment shall be entered in Teixeira's favor.

**\* \* \* END OF ORDER \* \* \***

**COURT SERVICE LIST**

Recipients are ECF participants

Angelita Mary Teixeira
40389 Leslie Street
Fremont, CA 94538

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

6

MEMORANDUM OF DECISION RE: NON-DISCHARGEABILITY CLAIM
Case: 14-04025    Doc# 31    Filed: 01/01/15    Entered: 01/02/15 17:19:42    Page 6 of 6